## SPROWL et al. *vs.* KELLAR.

1. Acts of God, or inevitable accidents, which constitute a legal excuse for the loss of, or damage to goods, lost or damaged by the sinking or destruction of a steam boat, or other vessel, must appear to be the *immediate*, not remote cause of the loss or damage; and must be beyond the prevention or control of human prudence.

2. Where several defendants are sued jointly, as part owners of a steam boat, for a loss or damage to goods, occasioned by the sinking or destruction of such boat; part of them may be convicted and others discharged, according to the proof of their legal responsibility.

This was an action upon the case, in the nature of assumpsit, by David Kellar, against George Sprowl, Andrew Buchanan, Hugh Findley, James E. Dickson, James W. Behan, James M. Banks, John Kennedy and John Elliott, late partners in, and owners of the steam-boat, " Dewit Clinton :" and was prosecuted to recover damages, for a failure of the defendants, to comply with their undertaking, by a bill of lading, to deliver certain cotton, at New Orleans.

The bill of lading, upon which the action was founded, was in the following words:

" Shipped in good order and well conditioned, by Kennedy & Elliott, on board the good steam boat, called the Dewit Clinton, and flats in tow, whereof James H. Turner is master, for the present voyage, now lying in the Tennessee river, bound for New Orleans—to say, two hundred and fifty-three bales of cotton, weighing one hundred and four thousand, nine hundred and nineteen pounds, being marked and numbered as in the margin—are to be delivered.

without unnecessary delay, in like good order and well conditioned, at the port of New Orleans, (unavoidable dangers of the river only excepted,) unto Messrs Lockhart & Arrott, or to their assigns, he or they paying freight for the said goods," &c.

The declaration was in two counts—the first upon the bill of lading, setting out that the plaintiff had, before the date of the said bill of lading, confided to the care of the said Kennedy & Elliott, the said cotton, which was shipped, according to the tenor of the said bill of lading, the same being signed by one Behan, clerk of said steam boat, whereby the defendant undertook and promised to deliver the said cotton, without unnecessary delay, and in good order, unto the consignees, he or they paying freight, &c. : but that the said defendants not regarding their duty, nor their promise and undertaking as aforesaid, but so carelessly and negligently behaved and conducted themselves, that forty two bales of said cotton, through the mere negligence and improper conduct of the defendants, and their servants and agents, were greatly damaged, &c.

The second count was upon an implied undertaking of the defendants, whereby in consideration of the freight, they undertook to deliver the said cotton at the port of New Orleans, &c.—averring a loss and damage through negligence, &c.

The defendants plead, together, *non assumpsit,* and a verdict was rendered in favor of the plaintiff, for the sum of eleven hundred and eighty dollars and ten cents.

In the progress of the trial, as disclosed by a bill of exceptions, it was proved, that the cotton was

shipped in conformity with the bill of lading on board a flat boat, in tow by the steam boat De Wit Clinton: that on the voyage, near the mouth of the Tennessee river, a storm arose, which caused the boat to lay to; and during the night, while thus laying to, it was discovered, that the boat on which plaintiff's cotton was laden, had taken in water, and was in a sinking condition: that the cotton was then unladen from the boat; and there being much mud and water in the said boat, an examination was made by one of the hands on board, by feeling with his foot in the bottom of the boat, for the purpose of ascertaining if there was any damage done to her bottom: that after such examination, the cotton was reladen upon the same boat; and she immediately sunk; and thereby the cotton was injured.

Upon this proof, the counsel for the defendants asked the Court to charge the jury, that the defendants were not liable for any damage that arose from the sinking of said boat, if they believed that such sinking was occasioned by an injury the boat received from the violence of the storm; and if due care and skill were exercised in the examination of said boat, and such injury was not discovered, nor supposed by them to exist.

The Court refused to give these instructions; but charged the jury, that the same liability, and the same care and diligence attached, and was required, as at the first reception of the cotton on board.

The defendants, by counsel, then requested the Court, to instruct the jury, that if they believed that the plaintiff had failed to prove the defendants were partners or joint owners of the steam boat De Wit

Clinton, they could not support the action.   But the Court charged the jury, that if they found that only a part of the defendants were owners, they might find against such owners—if the plaintiffs had made out the case.

To the refusals to give the charges thus prayed; and to the charges given, the defendants excepted, and took a writ of error.

SAFFOLD, J.—The assignments of error in this case, arise out of the bill of exceptions, alone.   They present but two questions for consideration, both of which, however, are highly important in principle, and would require mature investigation, were they *res integra* in this Court.

The first relates to the sufficiency of the diligence and care, on the part of the owners and managers of the boat, under the facts as stated—which show that the boat may have been previously injured by a violent storm, and that a subsequent examination had been made, with a view to prevent any loss, in consequence thereof; and whether or not the effects of the storm, under the circumstances, would relieve the responsibility of the owners of the boat?

The second question is, whether, to entitle the plaintiff to recover against any of the defendants he must have proven to the satisfaction of the jury, that all were partners or joint owners of the boat?

The case of *Jones and others* vs. *Pitcher Co.*,[a] embraced fully both these points.   It was very elaborately discussed, and maturely considered by the Court. [a]3 Stewart & Porter, 135.

4 s & p.                    49

We there ruled, among other principles, that the acts of God, or the inevitable accidents, which constitute a legal excuse, must be the *immediate*, not the remote cause of the loss, and must be beyond the prevention or control of human prudence: that "if the loss was sustained in consequence of the sinking of the boat, and which the employment of prudence and skill, on the part of the proper officers, could have prevented, the owners were liable."

We there, also held, that part only of the defendants, who had been jointly sued, as partners and joint owners of the boat, might be convicted, and others discharged, according to the proof of their legal responsibility.

These principles are fully decisive of both the questions raised in this case; and the Court feel not the slightest dissatisfaction with the former decision. Indeed, the counsel have evinced no wish to attempt a discrimination between the cases, or to re-investigate the doctrine of liability, but have merely submitted the case.

Let the judgment below be affirmed.